25 C.C.P.A.(Patents)

## KASARJIAN v. PAULSON.
### Patent Appeal No. 4019.

Court of Customs and Patent Appeals.
June 27, 1938.

Cornelius Zabriskie, of New York City (Alva D. Adams, of Washington, D. C., and Nichol M. Sandoe, of New York City, of counsel), for appellant.

Harry A. Yerkes, Jr., of New York City (Lee B. Kemon, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal in an interference proceeding by the junior party from a decision of the Board of Appeals of the United States Patent Office which affirmed the decision of the Examiner of Interferences awarding priority of invention of the subject matter of the counts to appellee, the senior party.

The interference involves two copending applications for patents, that of appellant being serial No. 688,710, filed September 9, 1933, and that of the appellee being serial No. 632,745, filed September 12, 1932.

Of the four counts involved, counts 1 and 2 are representative and read as follows:

"1. A spark plug having a shell, a downwardly and substantially uniformly tapering center electrode head and a set of prongs united with the lower end of the shell constituting the ground electrodes, said ground electrodes being flattened and extending inward from the shell and being shaped concentrically around and directed down the tapered center electrode head so as to furnish large surface areas for the spark gap and a large section in the electrodes for conducting heat to the shell, as well as to be flexible enough for adjustment of the gap.

"2. A spark plug having a shell, a downwardly tapering circular spindle head, and a set of stout grounded electrodes supported by the shell and extending inwardly and downwardly therefrom and having inner side surfaces cross-axially curved concentrically with and extending downwardly along the circular spindle head to circumferentially and longitudinally conform thereto and collectively surround the greater part of the circumference of the complimentary portion of the spindle head

at the gap, so as to furnish a plurality of large surface areas for the spark gap, with a large section in each grounded electrode for conducting heat to the shell, said grounded electrodes being adjustable by bending them radially of the plug so that, by such adjustment, the large surface areas for the spark gap may be maintained."

The subject matter of the counts is set forth by the Examiner of Interferences as follows: "The invention relates to a spark plug having a large area, massive electrode structure whereby a large sparking area is provided and whereby heat will be conducted away from the electrodes thus insuring long electrode life by reducing spark erosion and preventing pre-ignition from overheated electrodes."

As originally declared, the interference, dated April 10, 1934, involved but one count. Appellant moved to dissolve the interference as to this count and also moved to add three additional counts. The Examiner of Interferences granted appellant's motion to dissolve, and also granted his motion to add the three counts, which are counts 2, 3, and 4 of this interference. Appellee moved to amend by adding certain proposed counts, which motion was denied with the exception of one claim which is count 1 of the present interference. The interference was redeclared July 20, 1936, on these four counts.

Both parties filed preliminary statements. Appellant alleged in his first preliminary statement filed May 3, 1934, that he conceived the invention set forth in the original declaration of interference on or about October 15, 1931; that he made his first drawings and disclosure to others on or about December 20, 1931; and that he reduced the invention to practice February 7, 1932.

After the interference had been redeclared as aforesaid, appellant filed a second preliminary statement dated August 16, 1935, in which he alleged conception, disclosure to others, and reduction to practice of the invention set forth in the redeclaration of interference, during the summer of 1931.

Appellee also filed two preliminary statements on May 2, 1934, and July 30, 1935, respectively, alleging in both that he conceived the invention, disclosed it to others, and reduced it to practice in January 1932. During the original motion period, each of the parties had access to the other's statement. This was, as the Examiner of Interferences stated, prior to the change in rules.

Appellee moved to have appellant held to the dates alleged in his first preliminary statement, but his motion was denied by the Examiner of Interferences.

Voluminous testimony was taken by both parties, and many exhibits are in evidence.

The Examiner of Interferences held that appellant failed to establish conception or reduction to practice of the invention defined in the counts prior to the filing date of appellee, and accordingly awarded priority of invention to appellee. The Board of Appeals affirmed the holding.

It will not be necessary to discuss the evidence offered by appellee, in view of the conclusion that we have reached.

The issue before us narrows to the single point as to whether or not Exhibit 1 supports the counts herein. Three other plugs made by appellant in the summer of 1931 are in evidence, but none of these is pertinent to the issue.

With respect to Exhibit 1, it was testified that the witness Daze made it from a sketch, in evidence as Exhibit 4. This sketch is not signed, dated, or witnessed, and it does not show the entire plug. A careful examination of Exhibit 4 convinces us, as it did the tribunals of the Patent Office, that it has little, if any, evidentiary worth. We do not see how the plug, Exhibit 1, could be made from the sketch, Exhibit 4.

The Examiner of Interferences and the Board of Appeals both held that Exhibit 1 does not support the counts. The said examiner carefully analyzed the distinction between them as follows:

"Furthermore, the plug, Exhibit 1, does not embody all the features set forth in the counts. That the device which is reduced to practice must embody the invention defined in the count; see Henderson v. Gilpin, 1913 C.D. 1. The spark plug art is an old and well worked art and from the art cited during the prosecution of the applications involved and in support of the motion to dissolve it is obvious that each limitation is a material one and can not be disregarded.

"Each of counts 2, 3 and 4 defines the ground electrode as 'having inner side surfaces cross-axially curved concentrically with and extending downwardly along the circular spindle head to circumferentially

and longitudinally conform thereto.' Count 1 defines the ground electrode as 'being shaped concentrically around and directed down the tapered center electrode head so as to furnish large surface areas for the spark gap.' This can only mean that the ground electrode is cross-axially curved to conform circumferentially to the central spindle. The plug, Exhibit 1, displays neither circumferential nor longitudinal conformity with the central electrode. Kasarjian in answer to Q237, page 36, Kasarjian record, says that the gap can be accurately set on his plug by removing the gasket, screwing in the core, conforming the ground electrodes against the center electrode, taking out the core and putting in a gasket of the proper thickness. When the gasket of Exhibit 1 is removed and the core screwed in it is readily seen that the ground electrodes do not conform to the central electrodes either circumferentially or longitudinally and that there is only a point contact between each ground electrode and the central electrode. This can also be seen by inserting a thin piece of paper between each ground electrode prong and the central electrode in the manner of a feeler gauge and then screwing down the central electrode, the result is that only dot-like imprints are made on the paper. The plug of Exhibit 26 which was used by Kasarjian's expert in rebuttal testimony and which is allegedly a plug of current production shows the feature of conformity very clearly and is interesting in emphasizing this lack of conformity in Exhibit 1."

The Board of Appeals agreed with the holding of the Examiner of Interferences that the limitations of the counts do not read upon Exhibit 1, and from a close inspection of the said exhibit we are of opinion that the said holding was proper. It appears that the ground electrode prongs are not curved but flat, and are tangent in relation to the circumference of the central electrode rather than conforming to it. It is also apparent that when the gasket is removed from the plug, and the central electrode is screwed down on the ground electrode, the contact between the electrodes is not constant through the longitudinal surfaces.

Evidently appellant considered cross-axial conformity of the electrodes to be an essential feature of the device. This is shown in the decision of the Examiner of Interferences as follows: "That cross-axial conformity is an essential feature is further attested by the argument of Kasarjian's counsel at the final hearing where he urged that Paulson's Exhibit C did not disclose any of the counts in issue because the ground electrode prongs there shown are not curved cross-axially but are flat, thereby being tangential to a circle concentric with the center electrode. This contention is well taken but it applies with equal force to the structure of Exhibit 1 wherein the blades are substantially flat in the same plane as shown by Paulson's Exhibit C."

We have examined appellee's Exhibit C referred to by the examiner. It is a drawing of a plug and it clearly shows that the ground electrode prongs are flat and tangent in relation to the circumference of the central electrode. Since appellant has properly contended that Exhibit C does not support the counts, by the same reasoning the counts do not properly read on his Exhibit 1.

Appellant contends that Exhibit 1 supports the counts and that the essentials held to be lacking by the tribunals of the Patent Office are, in fact, present, but that because the said exhibit was made by hand there are slight irregularities that are to be expected.

We have carefully examined Exhibit 1 and it appears to be a very well made and smoothly finished plug. We do not think that the square end on the ground electrode can be considered as intended by the maker to be curved.

It is our opinion that Exhibit 1 does not show conformity with the counts in that it is not cross-axially curved to conform in circumference to the central spindle to furnish large surface areas for the spark gap.

Because our holding in this respect is in agreement with the decisions of the Examiner of Interferences and the Board of Appeals that Exhibit 1 does not embody the invention defined by the counts, it is not necessary to discuss the tests to which Exhibit 1 or structures like it were put.

The decision of the Board of Appeals is affirmed.

Affirmed.